DECREE.
Judge Gaillakd.
At the outset of this case it is proper to observe, that the liberty granted to amend the bill, is of the nature of an interlocutory order, and not the subject of an appeal; but the parties, both the complainants and defendants being desirous of bringing their controversy to an issue, We have considered the points decided by the circuit court, and believe, that under the grounds of’ appeal from these points, the justice of the case may be come at. The points decided relate to Keene & Hart’s bond, and the indemnity from John P. Thomspon to Keene and the debt to Fisher and Edwards, and the fund to be resorted to, to pay it. Keene & Hart’s bond was given for the property of Col. Thompson, sold by the trustees, and purchased by Kean. Keene was but a nominal purchaser, and the sale to him was made merely with a view to a change of the property,(a) which continued in the possession of Col. Thompson, and was disposed of by him, by his will, to his family, who have had the benefit of it as devisees and legatees: This bond cannot, as was contended, constitute any part of the trust fund, liable to the debts to be paid out of the trust estate, and the indemnity to Keene was properly *890 siven- The next point is the debt to Fisher and Edwards;; the circuit judge decreed it to be paid; and it is now admitted that it must be paid, but it is insisted, that it should not be referred for payment to the reesiduary estate of Col Thompon. It is not referred to this fund exclusively, and should it fail, on the report of the commissioner of that fact, payment would be directed out of the estate of Col. Thompson, by his executor or representatives. It appeared to the circuit court to be the wish of all the parties, that the residuary estate should first be applied in the manner directed, and it was on this account that it was ordered to be sold, it being immaterial to Fisher and Edwards, from what source the money to go to them, should come : but although the ground of appeal on this part of the case, is of no consequence- to Fisher and Edwards, it is so far important, as (without intermeddling with the interlocutory order) it lets us into the consideration of the question respecting the debt to the loan-office . taken up by Major Haskell; and the funds for paying as well it, as the debt of Fisher and Edwards. We do not think the evidence adduced by the defendants, sufficient to prove that Major Haskell undertook to pay Col: Thompson’s proportion of the bond to the loan-office, when he got the conveyance from him, for the Mount Thompson tract, or that this debt is embraced among the settlements made between Paul Thompson and Major Haskell, or the receipts given by the latter to the former: it follows that Major Haskell, is'entitled to reimbursement of the sum he paid to relieve his land from the mort- *891 «•ao;e on it to'the loan-office, with interest thereon: This leads to another question; out of what fund is the reimbursement to be made ? the answer is, out of the fund assigned to Mr. Cochran, Major Has-hell, and John P. Thompson, to pay those debts to Fisher and Edwards, and to the loan-office, a m on others mentioned in the schedule annexed or referred to in the bond of assignment. The fund con-gits of the commissions charged against the trust es* tate, and retained in their hands. The deed is silent as to commissions, and as trustees, the complainants Cochran, and Haskell, and Paul Thompson, a* e not entitled to them. If the several sums retained by the trustees had been applied as they should have been to those debts, both would have, been extinguished, and the trustees cannot be al - lowed to derive a benefit to themselves, from diverting the fund they received from the object of the trust: they must refund those commissions with interest on the sums respectively retaine'd by them. If the amount to be refunded, be sufficient to pay the debt to Fisher and Edwards, and it be so applied as it must be, the aid of any other fund will he rendered unnecessary; if it be more than sufficient, the excess must be applied to the reimbursement of the debt paid by Major Haskell, to the loan-office: but if the fund arising from the commissions be . not sufficient, the deficiency must be made up, out of Col. Thompson’s estate, and be paid forthwith by the representatives of executor, Paul Thompson ; and on this event, *892 representatives aforesaid must also pay to Maior Haskell whatever may be due to him, on account of the loan-office debt, (the consideration of the interlocutory order being reserved.) The representatives of Col. Thompson’s estate must satisfy, not only Col. Thompson's proportion of the bond to the loan-office, hut also the proportions which may he due by the estate of Hart and William R. Thompson, leaving to the representatives of Col. Thompson to call on the executors of Hart and William R. Thompson, if they think proper to call on them, for contribution, if they he liable to make it. The trustees, Cochran and Haskell, and P. Thompson, or his representatives, will be respectively entitled to credits against the commissions to he refunded, for all sums they may have paid on the debt to Fisher & Edwards, and to the loan-office; hut the payments made by.Col. Thompson in his life time, and by Paul Thompson as executor, from the time of his father’s death, to that of the compromise he made in January 7th, 1808,† with the residuary legatees enure to the benefit of Col. Thompson’s estate. It is only for payments made subsequent to the above period, that the executors of Col. Thompson are entitled to credit.
According to the foregoing view, the debt of Fisher & Edwards must be paid to the person authorized to receive it, on the confirmation of the report of the commissioner ascertaining the amount. It must be paid forthwith, out of the fund to be constituted from the commissions to be refunded $ and *893 if that fail, or not, be forthcoming at the time of the report, out of Col. Thompson’s estate, by his representatives. Whatever may- be due to Major Has-hell, must be paid out of the trust-fund aforesaid ; and if the same be insufficient, out of the estate of Col. Thompson, in the hands of the representatives of John P. Thompson, so soon as the accounts between Major Haskell and the estate of J. P. Thompson, shall be adjusted by the commissioner, to whom a reference is ordered, the accounts to be confined to the payments respectively nsade by them as abovementioned, on the debt to Fisher & Edwards and the loan-office : the costs of suit to be paid in the following manner: the costs of Fisher & Edwards to be paid out of the trust fund, and of Major Haskell, by the representatives of Col. Thompson, out of his estate.
It is ordered and adjudged, that the decree of the circuit court be affirmed, enlarged, and modified, according to the foregoing view, and the principles herein before laid down.
We concur in the above.
H. W. Desaussuee,
T. Waties,
W. THOMPSON,
W. D. James.
Columbia, Dee. 17th, 1822.
*894 At the next meeting of the Court of Appeals at Columbia, on 22nd day of April, 1823, the plaintiff petitioned the court for a rehearing; the petition after stating the facts, submitted the following reasons for a rehearing of the cause.
X. That the principal point in the decree is the order that Haskell and Cochran should pay back the sums retained by them in 1797 as commissions : But there is nothing in the pleadings on which this order can be grounded. So far from a case being made by the pleadings, to charge them on this head, no such demand was set up even by way of argument : The decree, therefore, is made on matters not in issue.
2. That Bourdieu, Chollet & Bourdieu, are only nominally relieved: they can have no execution for their debt, as there is no precedent of an execution by one plaintiff against his co-plaintiff; and a decree between co-plaintiffs is unprecedented and irregular.
3. If this order be considered an or'der in favour of Dr. Raoul it is equally irregular; because the Dr had not put this matter in issue. As it is not a matter submitted by the bill, it could only have been put in issue by a cross- bill. But so far from filing a cross-bill for that purpose, the defendants did not make any such claim in their answer: nor even bring it to the view of the Court in their argument.
*895 4. That the decree is not only irregular hut in.consistent; for the decree made at the hearing in Orangeburg declares that the settlement between John P. Thompson and the other parties in 1803, Was finid. The Court of Appeals do not contradict, but confirm the decree on this point; yet the order opens an account, (though not the account in issue) included in that settlement; in direct contradiction to the declaration of the decree, and inconsistent with the reasons on which it is founded.
5. Lastly, the decree is not only irregular, and inconsistent, but contrary to principle. Because it is in effect a decree in favour either of Raoul, or of Bourdieu against Haskell and Cochran, for the opening of a stated account, and the execution of a trust, which is a matter purely equitable: But it is a fundamental principle of this court, that every one impleaded upon a demand resting in equity and conscience, has a right to the benefit of his answer upon oath: But by this decree Haskell and Cochran are deprived of the benefit of that rule.
Judge Gaillard.
You are not allowed to argue a petition for rehearing; the Court will correct a decree for a mistake apparent on the face of it, but will not go into the merits.

Mr. Pettigrue.

We do not ask to be allowed to go further than the face of the decree. All the objections are such as may be taken on a bill of review, and we are ready to show that we ought to be *896 aiiowe(i to be heard on account of the extraordinary circumstances of this case.
By the Court.
In Burn vs. Poag, 3 Des. 596. the rule was laid down, that after a full and final decree, the Court is not at liberty to open cases for a rehearing; though it has in a few instances, corrected palpable errors arising from misstatements, oversight, or misapprehension, upon simple suggestions of such misapprehension. 3 Des. 616. We will hear you to-morrow on the question, whether you shall be allowed to argue the points made in your petition.
Mr. Pettigrue.
To show that the Court ought to grant a rehearing of this cause, I will confine myself to what appears on the decree itself, and the plead-, ings ; and hope to prove, that there are errors apparent on the face of the record, which the Court ought to correct. In the first place, it is apparent on the face of the record, that' the principal point in the decree, viz: the order that Haskell and Cochran pay back the sums received by them in 1797, has not been put in issue by the proceedings. To be sensible of this, consider what was put in issue by Haskell and Cochran, and what the.Court has decreed. They alleged an agreement between themselves and John Paul Thompson, to divide the sum of ¿743 6if. 7of. equally.between them, and a settlement in 1797, on which a balance is due. Whether there was such a settlement, and whether there be *897 a balance due on it, which Haskell and Cochran can _ , _ # recover at this day, was the matter m issüe. In proof of the settlement, they read a memorandum in the hand-writing of Thompson. His Honour súppo-ses there was such a settlement j but rules that cannot compel J. P. Thompson’s representatives to pay the balance which they claim : this is regular ; and if the decree stopped here, there would be no eomplaint. But the decree proceeds to open that settlement; and also another settlement, noticed by the Court, made in 1803, and to compel Haskell and Cochran to pay b'áck what they had already received. Let the pleadings be examined. Whether the settlement shall be opened, is surely not an issue tendered by the plaintiffs. Have the defendants' attempted to put it in issue ? Examine their answers They say they do not. know that there was any settlement of commissions, or any balance due j but if there be a balance due on the face Of the settlements they rely on proof of payment, and the presumption arising from length of time. So far then, from putting in issue the question whether this settlement Should be opened, the answer of the defendants is directly contrary ; for they rely on payment, and the presumption from length of time. But if the presumption from length of time, could bar the plaintiffs from recovering the balance due on a Settlement, made in 1797, the same presumption will apply still more strongly, to prevent that settlement from being opened at this day. Did they, by their proofs, make a case to open the settlement? So far from it, the decree shows that they introduced what *898 they contend to be evidence of a final settlement, # * between the same parties, made six years after-wards. On the face of the decree, then, it is appa- , 7 7 rt rent that the Court, by ordering Haskell and Cochran ttf pay back the sums retained by them, under the settlement of 1796, has decided on matters not in issue. It is scarcely necessary to cite authorities to show that this is improper. The rule laid down by Lord Redesdale in the Treatise on Pleading, 39. 44. cannot be disputed.
As to the second ground taken in the petition, viz: that this is a decree between co-plaintiffs, it is impossible to deny the fact. The decree most ex-pi s-'ssiy directs, that Haskell, Cochran, and Raoul shall contribute to pay oif Rourdieu, Chollet and Bourdieu: but Haskell and Cochran are co-plaintiffs with Rourdieu: it is therefore nothing more-nor less, than a decree in favor of Bourdieu against his two co-plaintiffs and the defendant. A decree, cannot be made even between co-defendants. Redes. 76, 77. 8 Ves. 123. There is one reason against a decree between co-plaintiffs that must strike every one as conclusive: there can be no issue between co-plaintiffs. If one of the plaintiffs were to assert, am. the other to deny any material fact, -it would make the bill insensible and repugnant. A decree, then, between co-plaintiffs, must necessarily be upon matters not in issue.
Whether we view the order, therefore, as an order in favor of Raoul, or in favor of Bourdieu, the *899 decree stands equally exposed to the fundamental x J 1 ^ objection, that it decides on matters not put in issue. This is not merely a technical objection. The l’ules of pleading are adopted, because they are the most effectual means of promoting justice. Every departure from those rules must, therefore, be calculated to produce injustice — but the evil lies still deeper. A decree on matters not put in issue, deprives the party against whom it is made, of the benefit of answering the allegations of his adversary; and in this very case, it is apparent that Haskell and Cochran, have not had the benefit of answering. But the protection allowed to defendants, in this Court, by admitting their answer on oath, is a rule of property. It is emphatically so stated by Lord Eldon, in Evans vs. Bicknell, 6 Ves. 174. iC In this Court, a defendant, has the protection aris- “ ing from his own conscience, in a degree which (C the law does not give him protection. If he pos-tc itively, plainly, and precisely deny the assertions* tc in the bill, and one witness only, proves it, as (i positively, clearly, and precisely as it is denied, “ and there is no circumstance attaching credit to “ the assertion, overbalancing the credit due to the (i denial, a court of equity will not act on the tes-li timóny of that witness.” 6 Ves. 184. And his Lordship then proceeds to show that the rule of property in equity, cannot be adopted into the court of law, because this protection is an essential part of that rule; and this protection cannot he had at law. It is singular that the decree at the circuit, not only recognises this rule, hut even pushes it so far. *900 in favor of the defendant^ as to refuse the plaintiff relief, merely because all the evidence of John P. Thompson’s liability to pay off the loan-office debt, was not introduced in the bill. The judge, on the hearing at the circuit,, ordered the plaintiff to amend his bill in order that the defendant might have an opportunity of denying or contradicting the evidence of Hart: although the evidence of Hart, was only to rebut the case made by defendants in their answer. R must have been by mistake, therefore, that the operation of this rule, was overlooked by the same judge in the Court of Appeals.
But it may be said, that the situation of Raoul is altogether defensive; and that his demand is allowed merely as an off-sett.
Consider the case in the most favourable light Suppose it merely an allowance to Raoul, in the account between him and Haskell. Let us waive the fact that there is no account between Cochran and Raoul; let us give up the consideration, that this order compels Haskell to contribute to pay off his co-plaintiff Bourdieu, and treat the order, merely as an allowance of so mueh to Raoul, in exoneration of Haskell’s demand. The case will then stand thus. Haskell claims a sum of money from the defendants as a creditor of William Thompson, and his debt is established. The decree admits that he has proved his debt, and that the defendant has not disproved it. Then the decree goes on to declare that the defendant has a right to demand a greater sum *901 of money from the plaintiff on another ground. Now how can the Court determine that the plaintiff is a debtor to the defendant, unless this has been put in issue ? If defendant in a court of law have a discount or set-off of another debt against plaintiff, he must plead it, or give notice; and must prove it by the same proof which would be necessary if he were plaintiff. In this Court, the defendant setting up a separate and distinct claim against the plaintiff, not disproving his demand, but claiming the benefit of a new demand against him, must in like manner establish his demand, by the same proof which would be necessary to entitle him to a decree if he were complainant. But what is this, which is allowed to Dr. Raoul ? He is allowed to open a settled account, and to compel the execution of a trust against Haskell. Is not this a matter purely equitable? And can a mere equitable demand be established against any person, without allowing him to answer the case made by the plaintiff, on oath? He that claims property by equitable title, claims it subject to this defence. It is plain however that every decree between co-complainants, and every decree in favour of defendant on matters not in issue, must violate this rule of property; and this decree does violate it, whether we consider it as a decree in favour of Bourdieu, or of Raoul. The rule itself has its foundation in the first principles of the law. For the words of Magna Charta, Nu'lus liber homo, &c.” are interpreted by Lord Coke, the most able expositor of the statute, to mean that no one shall be condemned, either in civil, or criminal matter with *902 out hein$ reSularIy P<R on his defence, e< Nisi per “ legem terroe: without being brought in to answer “ by due process of the common law.” 2 List. 50. This due process, in this Court, is the subpoena to answer. In the court of law it would be either by an action, or a discount filed.
If these objections to the principle of the Decree have any weight, the extraordinary circumstances of the ease,will entitle to the plaintiffs to have the cause reheard, even under the strict rule which the' Court has laid down as to motions for a rehearing. For it is a fact, and I appeal to the Court, and to the candor of the counsel on the other side, for the truth of the assertion, that the liability of Haskell and Cochran, to pay back this money, was not even suggested by the defendant; no such right was claimed by defendant; and the point was never noticed during the argument either by the Court or the Bar.
The case of Burn vs. Poag, 3 Des. 596. docs not operate against the present motion : it cannot extend to deprive one of relief who has been surprised. It is the bounden duty of every Court, to prevent its suitors from any wrong on account of its own act. “ If there be a principle upon which courts of justice ought to act without scruple, it is this, to relieve parties against that injustice occasioned by its own acts or oversight, at the instance of the party against whom relief is sought. Pultney vs. Warren, 6 Ves. 92. The principle certainly extends to this case, where the court, without the least notice, *903 have made a decree, on a matter not contained in the pleadings, not argued, not even thought of.
But if plain mistake^ is the only ground on which the Court will grant a rehearing, can there be a more evident mistake than to establish a settlement, and undo it, in the same decree? The decree declares that all dealings between the trustees, were finally ended and settled in 1803; the same decree orders Haskell and Cochran, to pay money for the benefit of John P. Thompson, in contradiction of that settlement.
So much upon the principle of the decree; and the peculiar circumstances of the case: and if I have made out these objections, to the satisfaction of the Court, I hope they will give the plaintiffs the benefit of them. It is no answer to say that in justice the plaintiffs ought to be charged with the sums they are ordered to pay : no demerit can deprive a man of the right of making his defence: but when we have leave to go into the merits we will show conclusively, not only that the rights of defendants have been committed by decreeing on a matter not in issue, and by charging t.hem, without allowing them the opportunity of a defence; but that in fact, there is no ground for charging them at all. That as against the plaintiffs, the decree is contrary to principle ; and as in favor of the defendants, it is contrary to evidence.
We submit, therefore, that we ought to be allow *904 ed to go into the argument. We will then show* most conclusively, not only that Dr. Raoul has not established anly demand against Haskell or Cochran, according to the rules of this Court, but that no such demand exists.

Motion refused.

£ra) Not in the evidence.